**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARRELL M. HEATH** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-1090** |
| | : | |
| **PDP COMISSIONER, MEDICAL** | : | |
| **DIRECTOR, PAROLE CHAIRMAN** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                        **May 10, 2024**

We return to reviewing how state actors addressed COVID-19 in our correctional facilities including the return of persons to general population after quarantine. The Commonwealth detained Philadelphian Darrell M. Heath for violating his parole. The Commonwealth held him in custody with a person later diagnosed with COVID-19. Mr. Heath developed COVID-19 symptoms. Unidentified state actors placed him in quarantine for seven days before returning him to the general population without a negative test for COVID-19. He claims physical and mental distress from this exposure. He now pro se sues unidentified supervising state actors for violating his civil rights and causing him emotional distress. He also asks we remove his state court detainer and pardon him. We granted him leave to proceed without paying the filing fees. We now meet our Congressionally-mandated screening obligations requiring we dismiss his claims.

We dismiss Mr. Heath's claims with prejudice for a pardon or sentence commutation, money damages under the Pennsylvania Constitution, money damages against the state Parole Chairman in his official capacity, and Eighth Amendment claims. We dismiss Mr. Heath's claims without prejudice to timely file an amended Complaint consistent the known facts and this Memorandum including identifying the persons serving in those roles or showing why he cannot identify the persons.

## I.      Alleged pro se facts

Philadelphia police arrested Darrell M. Heath on August 24, 2022 while he continued serving on parole for a 1993 offense.[1] An unidentified Parole Chairman issued a detainer against him.[2] The City detained Mr. Heath at the Curran-Fromhold Correctional Facility pending trial.[3] The Philadelphia Department of Prisons Commissioner, unidentified Medical Director, and unidentified Parole Chairman oversaw Mr. Heath's custody and the Facility's daily operations.[4]

The Facility first held Mr. Heath in the intake block.[5] Mr. Heath did not have access to basic hygiene or the commissary for forty-eight days.[6] The Facility then moved Mr. Heath into a new cellblock.[7] His cellmate had symptoms of COVID-19 and tested positive in November 2022.[8] The Facility did not quarantine him immediately.[9] The Facility officials knew how COVID-19 spreads and they knew about precautions to reduce the infection's spread.[10] The Facility kept Mr. Heath's cellmate in the cell with Mr. Heath for approximately twenty hours after he tested positive before sending him to quarantine.[11] No one provided Mr. Heath with bleach or cleaning supplies to sanitize his living space.[12]

Mr. Heath fell ill three days later.[13] The Facility did not provide Mr. Heath a COVID-19 test for several days.[14] Mr. Heath tested positive.[15] The Facility quarantined him several days after he tested positive.[16] Mr. Heath's quarantine lasted seven days.[17] The Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman did not require exposed incarcerated persons, including Mr. Heath, test negative for COVID-19 to leave quarantine.[18] The Facility returned Mr. Heath to the general population without a negative test.[19]

Mr. Heath's illness caused him mental and physical stress.[20] The Facility moved Mr. Heath to a new cell pod because of his mental health issues.[21] Mr. Heath suffers from daily pains,

including loss of appetite, loss of sleep, and impaired organ function, putting him at an imminent risk of death.[22] These symptoms negatively impact his marriage.[23] Mr. Heath's lingering symptoms may require him to visit the hospital in the future.[24]

## II.   Analysis

Mr. Heath sued unidentified persons serving as Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman individually and in their official capacities alleging each unidentified person violated Mr. Heath's Eighth and Fourteenth Amendment rights by exposing him to unsafe living conditions and neglecting his medical needs. He does not identify the persons serving in these roles. Mr. Heath also sued for reckless infliction of emotional distress and violations of the Pennsylvania Constitution. Mr. Heath seeks compensatory damages, punitive damages, and attorney's fees. He also asks we remove his detainer and grant him a full pardon or commutation of his sentence.

We review the Complaint before issuing summons consistent with our screening obligations under 28 U.S.C. § 1915A.[25] We must dismiss Mr. Heath's Complaint before issuing summons if we find his claim is frivolous or malicious, he fails to state a claim on which relief may be granted, or he seeks monetary relief against persons immune from such relief.[26] We apply the same standard under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint under section 1915(e)(2)(B)(ii).[27] Mr. Heath can meet the Rule 12(b)(6) standard if he pleads "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[28]

We are directed by our Court of Appeals to be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings ... particularly when the pro se litigant is imprisoned.'"[29] Our Court of Appeals directs us to apply relevant legal principles even if the complaint fails to name them.[30] But "pro se litigants still must allege sufficient facts in their complaints to support a claim"

and "cannot flout procedural rules."[31] We accept all facts in Mr. Heath's Complaint as true and construe facts in the light most favorable to him to determine whether he states a claim to relief plausible on its face.[32]

We review Mr. Heath's Eighth and Fourteenth Amendment claims mindful Congress, under section 1983, allows persons to seek relief for constitutional claims in federal court.[33] "To state a claim under [section] 1983, [Mr. Heath] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[34] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[35]

We dismiss Mr. Heath's claims without prejudice to timely file an amended Complaint pleading claims for removal of his parole detainer, official capacity claims against the Commissioner and the Director, individual capacity claims against the Commissioner, Director, and Chairman under the Fourteenth Amendment, and intentional infliction of emotional distress if he can do so consistent with the known facts and this Memorandum. We dismiss all other claims with prejudice.

### A.    We dismiss Mr. Heath's claim for a pardon or sentence commutation with prejudice.

Mr. Heath seeks a full pardon and sentence commutation for unspecified charges. We cannot pardon Pennsylvania state offenses. The Pennsylvania Constitution grants the Governor the exclusive power to pardon state offenses.[36] "The power of commutation is an adjunct of the pardoning power, and can be granted only by the authority in which the pardoning power resides."[37] The power to pardon and commute state offenses belongs exclusively to the Governor. To the extent Mr. Heath seeks to pardon or commute a federal offense or sentence, the Framers in the Constitution vest this power exclusively in the executive branch.[38] We lack jurisdiction to grant

pardon or commute a state or federal sentence and dismiss claims seeking a pardon or commutation with prejudice.

**B.    We dismiss Mr. Heath's challenge to his parole detainer without prejudice to seeking habeas relief if warranted.**

The Philadelphia Department of Prisons Parole Chairman issued a detainer against Mr. Heath. He asks we remove his detainer. We dismiss Mr. Heath's challenge to his parole detainer without prejudice to him filing a habeas petition after exhausting state remedies.

Mr. Heath seeks injunctive relief in the form of quashing the parole detainer against him. "A prisoner cannot use § 1983 to challenge the fact or duration of his confinement or to seek immediate or speedier release."[39] Although the language in section 1983 might seem to cover Mr. Heath's challenge to his parole detainer, Congress provided a more specific instrument for relief: habeas corpus.[40] Because removal of the detainer may cause immediate or speedier release, it lies at "the core of habeas corpus."[41] Mr. Heath cannot challenge his parole detainer under section 1983. He "must seek federal habeas corpus relief (or appropriate state relief) instead."[42]

Mr. Heath's claim is not cognizable under section 1983 to the extent he seeks monetary damages for harm caused by the parole detainer. "In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[43]

**C.    We dismiss Mr. Heath's claims for damages under the Pennsylvania Constitution with prejudice.**

Mr. Heath brings claims for damages under the Pennsylvania Constitution. This relief is

unavailable. There is no private right of action for damages under the Pennsylvania Constitution.[44] We dismiss Mr. Heath's damages claim under the Pennsylvania Constitution with prejudice.

### D. We dismiss Mr. Heath's claims against the Philadelphia Department of Prisons Commissioner, the Medical Director, and the Parole Chairman in their official capacities.

Mr. Heath sues the Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman in their individual and official capacities for alleged violations of his Eighth and Fourteenth Amendment rights. He does not name the persons serving in those roles. We dismiss Mr. Heath's claims against the Commissioner, the Director, and the Chairman in their official capacities without prejudice.

#### 1. We dismiss Mr. Heath's claims against the Commissioner and Director in their official capacities without prejudice.

Mr. Heath sues the Philadelphia Department of Prisons Commissioner and Medical Director. We dismiss Mr. Heath's claims against the Commissioner and Director in their official capacities without prejudice because Mr. Heath does not sue the City or allege a policy or custom of the City violated his constitutional rights.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [employing] entity."[45] The Philadelphia Department of Prisons Commissioner and Medical Director are employed by the City. Mr. Heath's claims against the Commissioner and the Director in their official capacities are claims against the City of Philadelphia. But the City of Philadelphia is not a defendant. Municipal liability does not attach because Mr. Heath does not sue the City of Philadelphia or any other municipal body.

If Mr. Heath names the City as a defendant, his claims may proceed under a theory of liability recognized in *Monell v. Department of Social Services*.[46] Under *Monell*, a municipality, like the City of Philadelphia, is not liable for the unconstitutional actions of its employees simply

because of their employment.[47] But the City may be liable if Mr. Heath shows the City's "policy or custom" caused the violation of his constitutional rights.[48] Mr. Heath must identify the custom or policy to satisfy the pleading standard.[49] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict ... Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[50]

Mr. Heath does not allege facts allowing us to plausibly infer the City had an unlawful policy or custom of housing incarcerated persons with COVID-19 alongside incarcerated persons without COVID-19 causing Mr. Heath constitutional harm. Mr. Heath pleads the Commissioner and Director did not require negative COVID-19 tests before returning quarantined persons to the general population. But this is not a policy because Mr. Heath does not plead the involvement of a final decisionmaker. Mr. Heath does not plead an official proclamation, policy, or edict. Nor does Mr. Heath plead customs caused his alleged constitutional violations. Mr. Heath pleads only a singular instance of his exposure to COVID-19 as opposed to widespread or well-known municipal practices.

Mr. Heath's claims against the Commissioner and Director in their official capacities are claims against the City of Philadelphia. Mr. Heath does not sue the City or allege a policy or custom of the City of Philadelphia violated his constitutional rights. We dismiss Mr. Heath's claims against the Commissioner and Director in their official capacities without prejudice.

**2. We dismiss Mr. Heath's claims against the Parole Chairman in his official capacity with prejudice.**

Mr. Heath sues the "Parole Chairman" without identifying the individual by name.[51]  We liberally read Mr. Heath as suing the Commissioner of the Pennsylvania Parole Board.  Mr. Heath's

claims for damages are barred. "State parole board members are [] state officials entitled to Eleventh Amendment immunity when sued in their official capacities."[52] We dismiss the official capacity claims against the Parole Chairman seeking money damages with prejudice because they are barred by the Eleventh Amendment.

> **E.      We dismiss claims against the unidentified Commissioner, Director, and Chairman in their individual capacities.**

Mr. Heath alleges the unidentified Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman violated his Eighth and Fourteenth Amendment rights while acting under the color of law.[53] He alleges the unsanitary conditions of confinement and his exposure to COVID-19 at the Curran-Fromhold Correctional Facility constituted cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.[54] Mr. Heath alleges Facility officials were deliberately indifferent to his medical needs. Mr. Heath does not state a claim for relief under the Eighth or Fourteenth Amendments.

> **1.   Mr. Heath must identify the state actors subject to individual liability or show why he cannot now do so.**

Mr. Heath sues the Philadelphia Department of Prisons Director, Medical Director, and Parole Chairman without identifying an individual by name.[55] Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[56] Our Court of Appeals instructs we must "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims."[57] "[A] pro se complaint's language will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits."[58] Mr. Heath falls short of meeting his obligations under Rule 8 because his allegations are not sufficient to inform us of his claim or put the defendant on notice of this lawsuit.

We today grant Mr. Heath leave to amend identified Fourteenth Amendment claims. He must, in an amended pleading, either plead the names of the persons as known to him or show why he could not find out who serves in those roles through asking or a reasonable search.

### 2. We dismiss Mr. Heath's Eighth Amendment claims with prejudice.

The Eighth Amendment does not apply to Mr. Heath. Mr. Heath is a pre-trial detainee. "The Eighth Amendment only applies after there has been a formal adjudication following due process of the law and does not apply to pre-trial detainees."[59] The due process clause of the Fourteenth Amendment protects the rights of pre-trial detainees such as Mr. Heath.[60] We assess Mr. Heath's conditions of confinement claims under the Fourteenth Amendment. We dismiss his Eighth Amendment claims with prejudice.[61]

### 2. We dismiss Mr. Heath's Fourteenth Amendment claims without prejudice.

Mr. Heath does not allege sufficient facts to allow us to plausibly infer a Fourteenth Amendment violation because he does not establish any official's personal involvement in the alleged constitutional violations. Mr. Heath's pleaded facts do not state a claim under the Fourteenth Amendment for deliberate indifference or unconstitutional prison conditions even if he could connect the officials to the prison conditions he pleads.

#### i. Mr. Heath does not plead personal involvement.

Section 1983 liability cannot be based "solely on the operation of respondeat superior."[62] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[63] Mr. Heath must plead the Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman personally (1) "participated in violating [Mr. Heath's] rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in

[their] subordinates' violations;" or (2) "maintained a policy, practice or custom which directly caused the constitutional harm, including a failure to adopt a practice."[64]

Mr. Heath does not plead the Commissioner, Director, or Chairman personally participated in violating Mr. Heath's constitutional rights. Mr. Heath does not allege any specific facts about their actions. Mr. Heath pleads only generalized vague or conclusory statements about their supervisory roles, including: they oversaw his detention, they knew about the dangers of COVID-19 and precautions to reduce the risk of infection, they exposed him to COVID-19, and, "Due to Defendants [sic.] actions, Plaintiff [sic] suffers emotional stress[.]"[65] He does not plead facts connecting the Commissioner, Director, or Chairman to the alleged constitutional deprivations. He pleads he shared a cell with someone who tested positive in the Facility. But Mr. Heath does not specifically plead the Commissioner, Director, or Chairman's individual involvement in or knowledge of his exposure.

We dismiss Mr. Heath's Fourteenth Amendment claims against the Commissioner, Director, and Chairman in their individual capacities without prejudice because he does not plead personal involvement.

### ii.    Mr. Heath does not plead a claim for deliberate indifference.

Mr. Heath claims the Commissioner, Director, and Chairman showed deliberate indifference to his medical needs by exposing him to COVID-19 causing him to fall ill while awaiting trial. Mr. Heath does not state a Fourteenth Amendment deliberate indifference claim because he pleads the Facility took concrete steps to mitigate the effects of COVID-19.

"To establish deliberate indifference, [incarcerated persons] must show the Government knew of *and disregarded* an excessive risk to their health and safety."[66] We defer to the expertise of medical officials and jail administrators when evaluating state actions in the COVID-19

context.[67] An incarcerated person will fall "well short" of establishing the deliberate indifference of a facility and its staff toward his medical needs regarding COVID-19 if the facility took concrete steps towards mitigating the medical effects of the virus.[68] A COVID-19 diagnosis alone "is an insufficient basis upon which to establish a constitutional violation."[69]

Mr. Heath pleads the Facility took concrete steps to mitigate the effects of COVID-19. He pleads his cellmate received a COVID-19 test when he fell ill. Although Mr. Heath's cellmate remained in their cell for twenty hours after testing positive, the Facility eventually quarantined his cellmate to reduce the spread of the virus. Mr. Heath's COVID-19 diagnosis alone is not enough to show a constitutional violation. Mr. Heath pleads the Facility tested him and quarantined him after he tested positive. He pleads the Facility moved him to a new cell pod because of his mental health issues. Mr. Heath pleads concrete steps the Facility took to mitigate the effects of COVID-19.  He does not state a claim for deliberate indifference.

### iii.    Mr. Heath does not plead a conditions of confinement claim.

Mr. Heath alleges the Facility's conditions of confinement, including his detention with a COVID-19-positive cellmate and lack of cleaning supplies, violated his Fourteenth Amendment rights. Mr. Heath does not state a Fourteenth Amendment conditions of confinement claim.

"The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees challenging their conditions of confinement."[70] "To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment."[71] A prison condition "amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[72] "Unconstitutional punishment typically includes both

objective and subjective components."[73] "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."[74] "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," we must heed our Supreme Court's warning "such considerations are peculiarly within the province and professional expertise of corrections officials."[75]

We are guided by our colleagues' analysis of how we evaluate prison condition claims related to COVID-19 precautions, including Judge Rufe's opinion in *Hersh v. McFadden* and Judge Smith's opinion in *Pumba v. Kowal*.[76] State actors in *Hersh* refused to provide a pretrial detainee with personal protective equipment in the early days of the COVID-19 pandemic. State actors eventually provided the pretrial detainee with a mask. The detainee alleged the delay in providing him personal protective equipment constituted cruel and unusual punishment under the Fourteenth Amendment.[77] Judge Rufe reasoned the failure to provide personal protective equipment cannot form the basis for liability because section 1983 claims "may not be predicated on a state actor's mere negligence."[78] Judge Rufe dismissed the pretrial detainee's Fourteenth Amendment claim because he did not "allege that the delay in providing PPE was accomplished with the intent to punish or otherwise harm him."[79]

An incarcerated person in *Pumba* alleged a corrections officer "permitted a pod worker who tested positive for COVID-19 to clean [the incarcerated person's] cell block without wearing a mask and presumably exposing [him] to COVID-19."[80] The incarcerated person contracted COVID-19. Judge Smith dismissed the claim because the incarcerated person did not allege "any conditions were excessive in relation to their legitimate purpose of managing the spread of the

virus."[81] The incarcerated person also did not allege the corrections officer "knew of and disregarded an excessive risk to his health and safety."[82] Judge Smith reasoned negligence alone is insufficient to state a claim for cruel and unusual punishment under the Eighth Amendment.

Mr. Heath pleads he contracted COVID-19 after his cellmate tested positive and remained in their cell. He pleads no one provided him with cleaning supplies. The Facility's negligence in failing to provide Mr. Heath with cleaning supplies and move his infected cellmate does not establish liability under section 1983. Mr. Heath does not plead the officials intended to "punish or otherwise harm him" when they failed to provide cleaning supplies and kept him with a COVID-positive cellmate.[83] Nor does he plead the officials "knew of and disregarded an excessive risk to his health and safety."[84] Mr. Heath's allegations are insufficient to establish a plausible constitutional claim.

We dismiss Mr. Heath's Fourteenth Amendment prison conditions claim without prejudice.

**F.      We dismiss Mr. Heath's claim for intentional infliction of emotional distress without prejudice.**

Mr. Heath claims he suffered intentional infliction of emotional distress because of unsafe living conditions and his exposure to COVID-19. "The elements of intentional infliction of emotional distress are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another."[85] Mr. Heath does not plead facts showing officials engaged in extreme and outrageous conduct. We dismiss his intentional infliction of emotional distress claim with leave to amend if he can do so in good faith.

**III.    Conclusion**

Mr. Heath sued the Philadelphia Department of Prisons Commissioner, Medical Director, and Parole Chairman for alleged violations of his federal and state constitutional rights and for

reckless infliction of emotional distress. He does not name the persons serving in those roles. We dismiss his claims with leave to sue named parties for claims not dismissed with prejudice.

We dismiss with prejudice Mr. Heath's claims for a pardon or sentence commutation, money damages under the Pennsylvania Constitution, money damages against the state Parole Chairman in his official capacity, and Eighth Amendment claims.

We dismiss Mr. Heath's claims without prejudice to timely file an amended Complaint pleading claims challenging his parole detainer, official capacity claims against the Commissioner and the Director, individual capacity claims against the Commissioner, Director, and Chairman under the Fourteenth Amendment, and intentional infliction of emotional distress if he can do so consistent with the known facts and this Memorandum including identifying the persons serving in those roles or showing why he cannot identify the persons.

---

[1] ECF No. 1 at 1–2, ¶¶ 1, 3.

[2] *Id.* at 3, ¶ 1.

[3] *Id.* at 1–2, ¶¶ 1, 3.

[4] *Id.* at 3, ¶ 6.

[5] *Id.* at 1, ¶ 1.

[6] *Id.*

[7] *Id.* at 1, ¶ 2.

[8] *Id.* at 1–2, ¶ 2, 4 ¶ 5.

[9] *Id.* at 1–2, ¶ 2.

[10] *Id.* at 3, ¶ 8.

[11] Mr. Heath pleads two different lengths of time in his complaint. He first pleads the Facility kept his positive cellmate with him for twenty-four hours. *Id.* at 1–2, ¶ 2. He then pleads the Facility kept his cellmate with him for twenty hours. *Id.* at 4, ¶ 5.

[12] *Id.* at 2, ¶ 3.

[13] *Id.* at 1–2, ¶ 2.

[14] *Id.* at 4, ¶ 7.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 4, ¶ 8.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 4, ¶ 9.

[21] *Id.* at 5, ¶ 10.

[22] *Id.* at 4, ¶¶ 6, 9.

[23] *Id.* at 2, ¶ 4.

[24] *Id.*

[25] *Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000).

[26] 28 U.S.C. § 1915(e)(2)(B).

[27] *Turner v. Dist. Att'y Philadelphia Cnty.,* No. 22-0491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[29] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.,* 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244–45 (3d Cir. 2013)).

[30] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244–45).

[31] *Id.* (quoting *Mala*, 704 F.3d at 245).

[32] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019).

[33] Congress provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

[34] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[35] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[36] *See* PA. CONST. art. 4, § 9(a); *Stewart v. Pennsylvania*, No. 23-295, 2024 WL 53012, at *3 (E.D. Pa. Jan. 4, 2024) ("In Pennsylvania, the power of commutation is entirely within the discretion of the Governor.").

[37] *Commonwealth v. Sutley*, 378 A.2d 780, 789 n. 12 (1977).

[38] *Pennsylvania Prison Soc'y v. Cortes*, 622 F.3d 215, 240–41 (3d Cir. 2010) ("The Constitutions of the United States and of the Commonwealth of Pennsylvania entrust clemency decisions to the sole discretion of the executive branch" (citing U.S. CONST. art. II, § 2, cl. 1)).

[39] *Moody v. LaValley-Hill*, No. 21-3885, 2021 WL 4745198, at *3 (E.D. Pa. Oct. 12, 2021) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

[40] *Preiser v. Rodriguez*, 411 U.S. 475, 489–490 (1973).

[41] *Id.* at 489 ("Such a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration.").

[42] *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).

[43] *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

[44] *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute

establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[45] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[46] 436 U.S. 658 (1978).

[47] *Id.* at 691.

[48] *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)).

[49] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

[50] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir 2019) (citations and quotations omitted).

[51] ECF No. 1.

[52] *Clauso v. Solomon*, No. 14-5280, 2017 WL 1528712, at *6 (D.N.J. Apr. 27, 2017), *aff'd*, 790 F. App'x 427 (3d Cir. 2019) (citing *Keller v. Pennsylvania Bd. of Probation and Parole*, 240 F. App'x 477, 479 (3d Cir. 2007)).

[53] ECF No. 1.

[54] *Id.* at 2, ¶ 3.

[55] ECF No. 1.

[56] Fed. R. Civ. P. 8(a)(2).

[57] *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019).

[58] *Id.* at 94 (citations omitted).

[59] *Perdue v. City of Philadelphia*, No. 20-3422, 2020 WL 7624929, at *1 (E.D. Pa. Dec. 22, 2020).

[60] *Ginyard v. Del-Prete*, No. 22-3213, 2023 WL 3967906, at *1 (3d Cir. June 13, 2023) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("Deliberate indifference claims are typically brought under the Eighth Amendment, but, when the claimant is a pretrial detainee, such claims are raised pursuant to the Fourteenth Amendment's due process clause."); *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) ("[W]hen pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment.") (citations and quotations omitted).

---

[61] *See Perdue*, 2020 WL 7624929, at *1 (granting motion to dismiss pre-trial detainee's Eighth Amendment claim where pre-trial detainee raised claims under both the Eighth and Fourteenth Amendments); *McGill v. Boyles*, No. 22-1724, 2023 WL 6319284, at *3 (W.D. Pa. Sept. 28, 2023) ("Plaintiff pleads a claim under the Eighth Amendment. Because Plaintiff was a pretrial detainee and not a convicted inmate, however, the Court construes this claim under the Due Process Clause of the Fourteenth Amendment."); *White v. Frey*, No. 22-1173, 2023 WL 4748180, at *3 (M.D. Pa. July 25, 2023) (dismissing pretrial detainee's Eighth Amendment claim with prejudice because "an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection.").

[62] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207).

[63] *Hersh v. McFadden*, 520 F. Supp. 3d 644, 650 (E.D. Pa. 2021) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[64] *Adger v. Coupe*, No. 21-1841, 2022 WL 777196, *3 (3d Cir. Mar. 14, 2022) (citations and quotations omitted).

[65] ECF No. 1 at 4, ¶ 9.

[66] *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325–31 (3d Cir. 2020) (emphasis in original).

[67] *Id.* at 329–30.

[68] *Id.*

[69] *Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022); see also *Hope*, 972 F.3d at 330 (explaining the Constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a correctional setting because "[t]hat task is not the constitutional standard").

[70] *Lawson v. City of Philadelphia*, No. 22-3672, 2023 U.S. Dist. LEXIS 80558, at *15 (E.D. Pa. May 2, 2023).

[71] *Id.*

[72] *Hersh*, 520 F. Supp. 3d at 651 (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)).

[73] *Stevenson*, 495 F.3d at 68.

[74] *Id.* (quotations and citations omitted).

[75] *Id.* at 68, n.3 (cleaned up) (citations and quotations omitted).

[76] *Hersh*, 520 F. Supp. 3d 644; *Pumba*, 2022 WL 2805520.

[77] *Hersh*, 520 F. Supp. 3d at 650–51.

[78] *Id.* at 651.

[79] *Id.*

[80] *Pumba*, 2022 WL 2805520, at *5.

[81] *Id.*

[82] *Id.*

[83] *Hersh*, 520 F. Supp. 3d at 651.

[84] *Pumba*, 2022 WL 2805520, at *5.

[85] *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).